# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 5, 2005

## STATE OF TENNESSEE v. KERRY D. HEWSON

**Appeal from the Circuit Court for Williamson County**
**No. I-701-203     Russ Heldman, Judge**

_____

**No. M2004-02117-CCA-R3-CD - Filed September 28, 2005**

_____

The defendant, Kerry D. Hewson, appeals from his Williamson County Circuit Court convictions of aggravated assault, for which he received an incarcerative sentence of six years, and reckless endangerment, for which he received a concurrent incarcerative sentence of two years. On appeal, he challenges the sufficiency of the convicting evidence, the lack of a jury instruction on reckless driving as a lesser included offense of reckless endangerment, and the trial court's sentencing determinations. Following our review, we affirm the convictions but modify the sentencing determinations.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Lee Offman, Franklin, Tennessee (at trial); and Jennifer Lynn Thompson, Nashville, Tennessee (on appeal), for the Appellant, Kerry D. Hewson.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The evidence at trial showed that the defendant was married to the sister of the victim, Arthur Falkenbach. The defendant and the victim were partners in a concrete finishing business known as Mid-South Concrete. The victim testified that he decided to terminate the partnership in October 2000, and on April 2, 2001, accompanied by his wife, he drove to a subdivision job site where the partnership's business equipment was stored on a trailer. The victim cut the lock restraining the trailer and attached the trailer to his truck. Before he left the subdivision, the defendant returned in his vehicle, and the victim left the roadway to make a cross-country exit from the area. The defendant pursued. When the defendant fired a gun at the victim, the victim was

frightened and told his wife to call the police. The victim testified that the defendant fired more shots at him before the police ended the high-speed chase on Interstate 65.

Mark Stuard, a former business partner of the defendant, testified that the defendant admitted to him that the defendant had intended to kill the victim on April 2.

Jeff Walker, a traveler on Murfreesboro Road on April 2, testified that the victim's and the defendant's trucks were traveling on the wrong side of the road and almost hit him.

A bank officer testified that Mid-South Concrete had executed a promissory note for funds to purchase $66,000 worth of equipment and that the victim had made payments on the loan.

The defendant testified that the victim stole equipment from the job site, that he fired his gun only once, and that he merely aimed at the victim's tire as a means of stopping him.

*I. Sufficiency of the Evidence.*

In his challenge to the sufficiency of the evidence, the defendant claims he committed no aggravated assault because he did not intend to injure the victim. He disputes the basis for his reckless endangerment conviction by claiming that the victim was himself guilty of this offense.

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003). The appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. The credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As alleged in the present indictment, a person commits aggravated assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury via the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(B) (2003). A person commits the felony offense of reckless endangerment who, via the use of a deadly weapon, engages in conduct which places another person in imminent danger of death or serious bodily injury. *Id.* § 39-13-103.

The evidence of record, taken in the light most favorable to the state, clearly established that the defendant committed an aggravated assault by firing a gun at the victim, causing

him to reasonably fear death or serious bodily injury, and that the defendant recklessly endangered Mr. Walker by driving his vehicle, a deadly weapon, on Mr. Walker's side of the road and nearly hitting him. This evidence needs no further elaboration and cogently supports each conviction.

## II.  Instruction on Lesser Included Offense.

In his next issue, the defendant claims that the trial court erred in failing to instruct the jury on reckless driving as a lesser included offense of reckless endangerment. We hold, however, that reckless driving is not a lesser included offense of reckless endangerment.

In *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), our supreme court promulgated a test for determining when a lesser offense is included within a greater offense. *Id.* at 466-67. In pertinent part, the court said that a lesser offense is included in the greater offense when:

> (a) all of its statutory elements are included within the statutory elements of the offense charged;  or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability;  and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest . . . .

*Id.*

As shown above, felony reckless endangerment is committed by one who "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury" through the use of a deadly weapon. Tenn. Code Ann. § 39-13-103 (2003). Reckless driving, a misdemeanor, on the other hand, is committed by one who "drives any *vehicle* in willful or wanton disregard for the safety of persons or property." Tenn. Code Ann. § 50-10-205(a) (2004) (emphasis added).

Reckless driving, though a lesser offense than felony reckless endangerment, requires the use of a vehicle. Although a motor vehicle is a deadly weapon, *see, e.g., State v. Tate*, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995), and although reckless endangerment is elevated to a felony when a deadly weapon is used, felony reckless endangerment does not require the use of a vehicle. As such, the lesser offense contains an element not contained in the greater offense, and therefore, category (a) of *Burns* is not applicable.

Neither is category (b). We discern nothing about endangering other people with a vehicle that *per se* entails a lesser degree of culpability or a lesser degree of risk than when using another type of deadly weapon.

Accordingly, the trial court did not err in declining to instruct the jury on reckless driving.

*III. Sentencing.*

The presentence report showed that the 39-year-old defendant held a high school diploma and a graduate certificate from Nashville Auto Diesel College. He had no record of criminal convictions.

At the sentencing hearing, Jennifer Hewson testified that she married the defendant in 1991 and divorced him in 2002. She testified that she is the victim's sister. She testified that the defendant had failed to pay her approximately $9,000 in alimony and that he owed approximately $20,000 in child support payments. She testified that the defendant's prolonged delinquency in making payments caused hardship for her and the couple's two young children. Ms. Hewson further testified that, in 1990, the defendant raised marijuana and bought and sold the drug.

Ms. Hewson testified that the defendant left her a few days before April 2, 2001. She testified that for up to six months prior to that date, the defendant had been threatening to kill the victim. Ms. Hewson acknowledged that the defendant had told her that he had a license to carry a handgun. She denied that she knew in advance of the victim's plans to take the equipment trailer on April 2, 2001.

Larry Falkenbach, the victim's and Jennifer Hewson's brother, testified that he and the defendant engaged in the business of dealing in marijuana in 1990. Mr. Falkenbach admitted that he had been convicted of possessing marijuana for resale in 1992. The defendant was never arrested for dealing in marijuana, or for anything else as far as Mr. Falkenbach knew.

Tangia Benoit testified that she had long been a friend of Jennifer Hewson. She testified that in 1987 she bought marijuana from the defendant and had seen marijuana plants growing in the defendant's townhouse. She had seen the defendant smoke marijuana only once.

The probation officer who compiled the presentence report testified that the defendant responded negatively to a question whether he had used illegal drugs in the past.

Sandra Hewson, the defendant's stepmother, testified that Jennifer Hewson told her that, upon her divorce lawyer's advice, Jennifer Hewson had asked the victim to obtain the concrete equipment as a means of raising cash for her.

David Hewson, the defendant's father, testified that the defendant "doesn't gamble. He doesn't drink. He doesn't do drugs. He works hard, gets up early in the morning to finish concrete." He testified that the defendant had obtained a license to carry a gun when he did private investigation work.

The defendant testified that he had moved to Alabama to avoid contact with the Falkenbachs. He denied that he had ever bought, sold, used, or grown marijuana. On April 2, 2001, he had poured a slab of concrete and had gone to lunch because the concrete needed time to cure before he applied the finishing machines. He testified that six months earlier, the victim had announced he was dissolving the partnership and had taken half of the company's equipment at that time. The equipment the victim took on April 2 included the concrete finishing machines the defendant needed on the job that afternoon.

The defendant testified that on April 2, 2001, he held a permit to carry a gun. He testified that he fired the gun once in an attempt to disable the victim's truck because the victim had "hit and run a vehicle." He testified that he called 9-1-1 within a few minutes of the victim taking the trailer. He testified that his intent was to recover the equipment. He claimed he thought he was "working hand [in] hand with the police" but acknowledged that the "gun was improper." Still, the defendant said, "I really thought that he was going to hurt some people and the gun was a tool to disable his vehicle." He testified that he aimed for the right rear tire.

The defendant denied that he had ever threatened to kill the victim.

The defendant testified that he is financially unable to pay the $500 per month in alimony and to pay in full the $1,366 per month in child support to Jennifer Hewson because over half of his wages in Alabama are subject to a child support garnishment for another child. The defendant introduced into evidence a copy of his 2002 federal income tax return that reflected an income of $18,296.

Following the testimony in the sentencing hearing, the trial court reviewed the principles of sentencing and announced, "A lot of what I'm going to do depends on how I view the credibility of the witnesses in this case, especially the credibility here at the sentencing hearing." Then, the judge stated that, after "eyeballing the witnesses," he believed that Jennifer Hewson was "telling the truth about the marijuana and Mr. Hewson [was] not."

The court applied the following enhancement factors: a previous history of criminal behavior, based upon the defendant's prior dealings with marijuana; an offense involving more than one victim; the defendant's lack of hesitation about committing a crime when the risk to human life was high; and circumstances under which the potential for bodily injury to a victim was great. *See* Tenn. Code Ann. § 40-35-114(2), (4), (11), & (17) (2003). In mitigation, the court found that the defendant acted under strong provocation and that the crime was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct. *See id.* § 40-35-113(2), (11). The judge stated that he placed great weight on the enhancement factors

and little weight on the mitigating factors. The court imposed a six-year sentence for aggravated assault and a two-year sentence for reckless endangerment.

Concerning the method of service of the aggregate sentence, the court found that probation was inapt due to the defendant's lack of candor and truthfulness. The court made no specific findings concerning sentencing alternatives other than full probation.

On appeal, the defendant claims that the trial court erred in applying certain enhancement factors to reach the maximum sentences for both convictions and in failing to grant probation as a sentencing alternative.

When there is a challenge to the manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. The court is required to consider (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -35-103(5) (2003).

The defendant is a standard, Range I offender convicted of a Class C and a Class E felony. As such, he is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. *See id.* § 40-35-102(6). However, this presumption does not entitle all offenders to an alternative sentence; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). The presumption of favorable candidacy for alternative sentencing may be rebutted, for instance, by a showing that confinement may be necessary to "protect society by restraining a defendant who has a long history of criminal conduct" or that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." *See* Tenn. Code Ann. § 40-35-103(1)(A), (C) (2003).

In the present case, the defendant claims that he should have been granted full probation. To be sure, he was eligible for probation. *See id.* § 40-35-306(2) (2003). However, the determination of entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to a less beneficent alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). A defendant is required to establish his "suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* Tenn. Code Ann. § 40-35-303(b) (2003); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by Hooper*, 29 S.W.3d 1.

*(a) Length of Sentences.*

The sentences imposed were the maximum sentences in the applicable ranges. *See* Tenn. Code Ann. §§ 40-35-111(b)(3), (5) (establishing overall ranges, respectively, for Class C and Class E felonies), -112(a)(3) (2003) (narrowing Class C range to a minimum of three years and a maximum of six years for Range I offenders), -112(a)(5) (narrowing Class E range to a minimum of one year and a maximum of two years for Range I offenders).

First, we address the defendant's claim that the trial court's application of enhancement factors without the participation of a jury violates his right to jury trial as explicated in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). The Tennessee Supreme Court, however, has determined that Tennessee's scheme for the trial judge's use of enhancement factors to sentence a defendant to more than the minimum sentence does not infringe upon the defendant's right to trial by jury as described in *Blakely*. *See State v. Gomez*, 163 S.W.3d 632, 658-62 (Tenn. 2005). We, therefore, reject the defendant's claim based upon *Blakely*.

Turning to the application of enhancement factors, we notice that some of the factors are themselves inherent in the elements of the conviction offenses. *See* Tenn. Code Ann. § 40-35-114 (2003) (authorizing the use of enhancement factors not "themselves essential elements of the offense as charged in the indictment").

First, we look at factor (11), that the defendant had no hesitation about committing a crime when the risk to human life was high, and factor (17), that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. *Id*. § 40-35-114(11), (17). This court has previously held that, considering the defendant's conduct *vis a vis* the named victim, these factors are inherent in the offense of aggravated assault predicated upon the use or display of a deadly weapon. *State v. Hill,* 885 S.W.2d 357, 363-64 (Tenn. Crim. App. 1994).[1] Also,

---

[1] The alleged mode of aggravated assault was the use or display of a handgun, as opposed to the use of the
(continued...)

this court has said that factors (11) and (17) are inherent in the offense of reckless endangerment. *State v. Robert Chapman*, No. 02C01-9510-CR-00304, slip op. at 6 (Tenn. Crim. App., Jackson, Jan. 15, 1997). Thus, the trial court erred in applying factors (11) and (17) to the aggravated assault conviction based upon the risk posed to the victim and to the reckless endangerment conviction.

That said, we do conclude that the record contains a separate factual basis for applying factor (11). The victim's wife was riding in the truck at which the defendant fired his gun. This fact serves as a basis for enhancing the aggravated assault conviction.

Regarding factor (4), that the offense involved more than one victim, we note that the offense of reckless endangerment may be committed against the "public at large," as opposed to being committed against an individual named in the indictment. *See State v. Payne,* 7 S.W.3d 25, 29 (Tenn. 1999) ("reckless endangerment can be committed against the public at large if the proof demonstrates that members of the public were in such close proximity to the defendant that a reasonable probability of death or serious bodily injury existed"). Moreover, the multiple victim factor is not applicable when separate convictions are based upon the existence of the separate victims. *State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); *State v. McKnight*, 900 S.W.2d 36 (Tenn. Crim. App. 1994).

In the present case, the reckless endangerment count of the indictment alleged a felony offense via the use of a motor vehicle as a deadly weapon, as opposed to the use of a handgun, and alleged that the defendant placed "other persons" in imminent danger. The indictment did not name an individual victim.[2] We hold that, under these circumstances, the indictment charged reckless endangerment against the public at large and that, in this circumstance, factor (4) would not be applicable to the reckless endangerment conviction.

The result is that only factors (2), based upon the defendant's 1990 criminal behavior in the marijuana trade, and (11) were applicable to enhance the defendant's aggravated assault sentence. Only factor (2) was applicable to the reckless endangerment sentence. Because the trial court emphasized the weight of the four enhancement factors it applied, we reason that the proper use of a lesser number of enhancement factor *vis a vis* the mitigating factors found by the trial court results in a two-year enhancement above the minimum for the aggravated assault conviction and a one-year enhancement above the minimum for the reckless endangerment conviction. Thus, upon our *de novo* review, we impose a sentence of five years for aggravated assault and leave undisturbed the two-year sentence for reckless endangerment.

---

[1](...continued)
defendant's vehicle.

[2] The evidence in the trial showed that Mr. Walker, one of the "other persons" on the road, was endangered when the defendant drove on the wrong side of the road and nearly hit him.

*(b) Alternative Sentencing.*

We may dispose of the defendant's claim of full probation in short order. "[L]ack of candor militates against the grant of probation." *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002). In the present case, the trial court's finding of and reliance upon a lack of candor as a basis for denying full probation were palpable and supported in the record. We hold that the defendant failed to establish his entitlement to full probation.

Notwithstanding, we discern an insufficient basis in the record for denying all forms of alternative sentencing. On many occasions, we have emphasized that the presumption of favorable candidacy for alternative sentencing, which is applicable in the present case, may be overcome by showing that at least one of the conditions set forth in Tennessee Code Annotated section 40-35-103(1) is met. *See, e.g., State v. Jimmy Ray Dockery*, No. E2004-00696-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Nov. 30, 2004) ("Although the defendant enjoyed the presumption of favorable candidacy for alternative sentencing, the record reveals two solid bases for overcoming the presumption: (1) that confinement is necessary to restrain a defendant who has a long history of criminal conduct and (2) that measures less restrictive than confinement have recently been applied unsuccessfully to the defendant."); *State v. Christopher C. Rigsby*, No. E2003-01329-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Dec. 29, 2003) ("[T]he record in this case amply demonstrates that the presumption of favorable candidacy for alternative sentencing in general was soundly rebutted by the defendant's extensive history of lawless behavior," citing Tennessee Code Annotated section 40-35-103(1)(A)); *see also State v. Nunley*, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (stating that although the factor "social history" must be considered "in determining whether to grant probation . . . , social history is not *specifically mentioned* by the code as a factor to be used in overcoming the presumption of suitability for alternative sentences") (emphasis added).

In the present case, we discern the presence of no statutory conditions that would serve to overcome the presumption of favorable candidacy for alternative sentencing. The defendant has no lengthy history of criminal conduct, *see* Tenn. Code Ann. § 40-35-103(1)(A) (2003); no facts established a need for deterrence, *see id.* § 40-35-103(1)(B); and measures less restrictive than confinement apparently have never been unsuccessfully applied to the defendant, *see id.* § 40-35-103(1)(C). The sole remaining statutory factor is that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense." *See id.* § 40-35-103(1)(B). The use of this factor, however, must be predicated upon a finding that the nature and circumstances of the offense are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *See State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981); *State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991) (*Travis* qualifiers of nature and circumstances of offense have been codified in section 40-35-103(1)(B) which considers confinement to avoid depreciating the seriousness of the offense). The trial court made no such finding, and we find no basis for saying that the offenses were "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree."

Although, as we have noted above, a sentencing court may appropriately consider "the defendant's candor and credibility, or lack thereof, as indicators of his potential for rehabilitation" and, accordingly, as a basis for denying full probation, *see, e.g., State v. Michael K. Miller,* No. W2003-01621-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, July 27, 2004), we have recognized that "absent other factors, untruthfulness to the court will not per se warrant a denial of all alternative sentencing" in general, as opposed to probation in particular, *see State v. Tammy Cheak Trent,* No. E2003-01726-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Knoxville, Oct. 20, 2004).

The upshot is that we see no basis for concluding that the state overcame the defendant's presumption of favorable candidacy for an alternative sentence. We are constrained, therefore, upon our *de novo* review, to determine whether an alternative to total confinement exists that will fulfill the goals and objectives of our sentencing guidelines. We know that the defendant, having a conviction of aggravated assault, is not eligible for a placement in a community corrections program. *See* Tenn. Code Ann. § 40-36-106(a)(1)(C) (2003) (restricting general eligibility for community corrections to persons who are convicted of "nonviolent" offenses). That said, our alternative sentencing law avails to the defendant in this case a "sentence of continuous confinement to be served in a local jail or workhouse in conjunction with a term of probation." *See id.* § 40-35-104(c)(5); *see also id.* § 40-35-306(a). We conclude that such a term of split confinement is in order in the present case. As a result, the defendant shall serve his aggregate five-year sentence as follows: Incarceration in the Williamson County jail or workhouse for a term of six months, with the balance of the sentence to be served on supervised probation. During the confinement portion of the sentence, the sheriff may avail to the defendant rehabilitative programs such as work release.

_____
JAMES CURWOOD WITT, JR., JUDGE